Our third argument of the morning is in Appeal No. 22-2959, the United States v. Raymond Bowie. Mr. Leon, good morning to you. Thank you, Your Honor, and may it please the Court. Discourse of A.K. Raymond Bowie's 72-month sentence. In remand, the sentence is flawed on two procedural grounds, which involve the due process clause and the sentencing guidelines. Because both grounds stem from the District Court's misunderstanding of USSG 2K2.1A3, I'll go ahead and explain that first. At the sentencing hearing, the District Court used the PSR's incomplete quote of 2K2.1A3 to analyze whether that provision accounted for the nature of the automatic firearm in this case. The PSR mentioned the semi-automatic provision in A little i, but it did not mention the fully automatic provision in A double i. So the District Court had only the semi-automatic provision before it during the sentencing hearing, and that caused the District Court to incorrectly assume and conclude that the firearm in this case, the automatic firearm, was not taken into account. Mr. Leon, your argument, I think, asks us to presume that the district judge did not know the law. Why should we do that here? And let me ask you this question. The district judge said it's not a semi-automatic weapon. When you look at the statute defining automatic weapon and machine gun, and it's long, right? It defines a lot of different types of guns. The gun that your client possessed was like none of those. It had been altered, and it was a shootout gun. You've seen these. It's a handgun with a big banana clip on the bottom of it, 30 bullets in it. You pull the trigger and boom, boom, boom, boom, boom, boom, boom, boom. And what the judge, I think, was saying here is your client was carrying an extraordinarily dangerous weapon that's used in shootouts. Why is that not enough? Why should we presume that by not citing a statute that talks about automatic weapons like machine guns, should we just presume that the district judge didn't know the law? Well, I don't think we have to presume it. The district court explained it. He looked at paragraph 15 in the PSR, and he said, comparing that gun to the PSR's paragraph, it does take into account the extended magazine, but it doesn't fully account for the automatic nature of this gun. And in that context, the district court was looking at the guidelines range and trying to figure out, is this a typical 2K2.183 case? And he concluded not because this gun was more dangerous than a semi-automatic gun. So I don't think we have to presume the district court didn't acknowledge all of 2K2.183. It's in the record, Your Honor. So it's important to understand, too, that the district court, after he made this point, he relied on it to sentence Mr. Bowie. And that causes a due process problem. I don't like to come to this court and raise the Constitution, but it is a clear misunderstanding of the law, and the district court relied on it. A district court violates due process according to this court's precedent if it gives attention to inaccurate information, bases its sentence in part on inaccurate information, or gives consideration to the same. Only one of those three is necessary. But the district court here did all three, and its written statement of the reasons confirms it. So there's no ambiguity about what the district court was relying on here. I don't think the court has to go to the guidelines issue if it rules on due process. I gave it that option so it doesn't have to reach the Constitution, but I do think this would be admittedly an odd procedural error under the guidelines. What the court did here was what many courts do. It didn't have to do this two-step process where it looked at the guidelines and sort of took into account what those guidelines considered and didn't, and vary under 3553A, but it did. And in doing so, it violated its own process. And this wasn't something that was minor in this case. It was the only question the district court asked at the sentencing hearing, and it was the one point that the prosecutor emphasized at the sentencing. So I think it's important to understand that in context. The court hasn't asked me any questions about standard of review, but I think it's very important to explain it here. Before this court's decision in Wood, we lacked a lot of clarity about what to say at the sentencing hearing, when to take exception, when to take objection. This court's opinion in Wood beautifully explained the rule, and we're relying on Wood. The government does cite some older precedent that's a little bit ambiguous, but I think what the district court said here never came up in the PSR. It never came up in the briefing below. Yeah, your point on this, Mr. Leon, is that if there's the alleged error, the error that you're focused on, is one that occurred during the sentencing proceeding. Yes. That's your point. Yes. And therefore Wood says you don't have to take exception to it. It's preserved. Yes, and Wood has provided a lot of clarity for our office, and we just don't want the court to sort of make the pre-Wood case law come back. And it's important for trial counsel to know this at sentencing. Federal practice in criminal law is nothing but sentencing these days. So it's very important to understand when to object and when not to. I'll lastly talk about the supervised release issue. We spent some time on that in the briefing, and this court has been clear that if the district court doesn't announce a supervised release condition at the sentencing, this court vacates it unless it's a mandatory condition. I pointed the court to 3583D, and there's no condition in there that says a schedule of payment sheets is a mandatory condition. So I think that's a straightforward application of this court's precedent. And I ask the court to please vacate and remand that condition because it matters to Bowie. People get out of prison, they don't have a job, they have kids to take care of. He should be able to have a little bit more flexibility in what he spends the few dollars that he does have on. Mr. Leon, let me ask you this question. You know our case law pretty well. What's the best case that you have for the proposition that a district court's, as you argue, a district court's misunderstanding of a sentencing guideline computation and what it embodies is a due process violation because it infringes upon the defendant's right to be sentenced on the basis of accurate information? What's the best case law? Because it's hard for me to see that. Okay, so two points. To answer your question, the best case is Curley. In Curley, this court explained that a district court misunderstood how much time the defendant would serve under his sentence and then impose sentence. And this court said that's misinformation and we're going to remand. It did also point to some factual problems in that case, but it clearly said there were legal and factual misunderstandings. Yeah, see, if your position is right, it seems to me that it's just a procedural error. It's a procedural error that occurred at sentencing. So take, for example, a drug case where drug quantity is increased based upon somebody having three kilograms of heroin or something. And then at sentencing, the district court said, you know what, I think I need to vary upward because it really bothers me that you possess three kilograms of heroin. Everyone would say, you don't need to vary upward. The guideline computation embodies that. But if the district court is laboring under, I know that's a very, very elementary, basic example, wouldn't you just call that procedural error? Yes, the guidelines were calculated correctly, but there's a misunderstanding as to what the guideline range embodies, what it includes. Yeah, and I think the court could decide this case under the guidelines in 3553 and call it an odd procedural error. It's kind of like Bartlett in a weird way. Bartlett said, you know, there was some confusion below and we think it's better to remand. So the court is making a choice based on deliberateness and not accident. But I want to get back very quickly to the due process of law question. The court seems a little bit worried that it wouldn't encompass a question of law or a misunderstanding. And just imagine if the district court here had said, you know what, yesterday I read 3553A, and that law says someone like you has to get the statutory maximum. That's an arbitrary decision that's based on a misunderstanding of the law. Our argument is not as atrocious, of course, but it's very similar. The due process clause is there to make sure that decisions are based on deliberateness, not accident, and that's very important in the citizen context. If the court has no further questions, I'll save the rest of my time for rebuttal. Okay, very well. Thank you, Mr. Leon. Mr. Reitz, good morning. Good morning. May it please the court, Brian Reitz for the United States. As the court pointed out, Mr. Bowie's argument is based on a presumption that the district court judge did not know the law. The record does not support that assertion, and in fact the judge's comment aligns with a proper understanding of the guideline. The judge said the guideline did not, quote, fully account for an automatic weapon. That is correct when one looks at the guideline itself. The guideline places a variety of objects in parity for the two offense levels, running the gamut from silencers, machine gun parts, single shot weapons, automatic weapons, and semi-automatic weapons. Here, Mr. Bowie possessed what was modified to be an automatic weapon, which the judge called a, quote, uniquely dangerous weapon. Now, one might then clearly look at the guideline and say when the guideline places that uniquely dangerous weapon in parity with objects that don't even fire bullets or fire one bullet, it did not fully account for that weapon. The judge used the same language when talking about the offense. The judge said that the guideline didn't fully account for Mr. Bowie's robbery because there were three victims. That same language evinced an understanding that the guideline did account for the conduct or weapon, just not fully. So we think the record does not support Mr. Bowie's assertion that the judge didn't understand the guideline. And this is outside the record, of course, but I would just step back and say I have not seen a sentencing hearing where a district court judge does not have the guidelines book with him or her. So it strikes me as very surprising to think that the judge would have looked at the PSR's recitation of a guideline and not referred to the guideline itself. I don't think the court should presume that Judge Hanlon did that here. Well, I mean, I think the only reason that Mr. Leon is saying that is because in the transcript on Appendix 41, what the district court says is the fact that the firearm was fully automatic has been referenced several times during the hearing. I just want to be sure I understand what that means. And then he says it says in the pre-sentence report in Paragraph 8 that it had been modified to be fully automatic. And then he says, so that would mean that the firearm would be per se illegal to have? And then I think it was the assistant at AUSA who said, yes, correct. So I do think there's, I mean, I think there are some references to the PSR. Because I think everybody just missed the statutory cross-reference. I don't, I'm not sure I would agree with that. I think Your Honor's first part of your question, I think divining exactly what the judge meant is an impossible task. We think the best interpretation of his statement is that he understood it. We don't think that's the only interpretation. I mean, it's not completely implausible that the judge has referred to the PSR, but that would require the court presuming that the judge didn't know the law. And I think that's the main point we want to hit on. I don't think that we have to prove with absolute certainty that the judge knew the law. We think this is at worst ambiguous, and the court should not presume that a district court judge didn't read the law. And again, I would point to the fully comment that the judge used that same language. The judge had to mean something when it used fully, which is a modifying adverb, and it used fully for the crime and for the weapon that Mr. Bowie used. So I think that's the best inference the court can draw is the judge did know the law and certainly should not presume otherwise. Yeah, I mean, so is your belief you can read the record as everyone was on the same page? The defendant and defense counsel, the government, and the district court, that the reason the enhancement applied had nothing to do with it being a semi-automatic and had everything to do with the statutory cross-reference to the tax code and hence, you know, the machine gun. Effectively, the machine gun reference. The guideline, I think, was applied based on the semi-automatic weapon, perhaps for the reasons Judge Kerr said, because it's a little unclear. You know, it was a semi-automatic weapon that was modified, so it operates as an automatic weapon. I think the PSR tried to be safe, but I don't think there's any objection that it was a semi-automatic, or perhaps if the PSR applied it for the automatic portion, there would have been objection and maybe some litigation about that. So the guideline was applied for the semi-automatic prong. Now, we think it could have been applied for the automatic prong as well. It's a little linguistic, right? If you say it's a semi-automatic, it's been modified to be an automatic, you'd say, well, why don't we just call it automatic then? That would have been fair. I think that the PSR and maybe the court were taking the safer route, because I think Judge Kerr's questions open up the idea that maybe this isn't an automatic weapon, and by applying the semi-automatic prong, the court and the PSR just avoided this whole conversation about which prong was correct. The semi-automatic prong accounts for the large-capacity magazine as well, which may have been the reason. Yeah, I think when you look at the guideline itself, that is the neatest fit. It's a semi-automatic weapon that has a high-capacity magazine. That's right there in the guideline. I think it makes sense to apply that, but by applying that, it doesn't mean that the judge didn't understand the rest of the guideline. I think that is a big presumption to make about a district court judge. I don't think the court should go there. Your Honor, Judge Scudder, you touched on the due process versus the procedural error. We would encourage the court not to go to the due process violation question. Guidelines and sentencing errors have their own mechanism. If Mr. Bowie is right and the judge misunderstood the guidelines, we still think it would be a harmless error, but that would be an error. If you take an extreme hypothetical like the heroin kilogram example that I gave, wouldn't you just call that a procedural error? Yes. Defendants have a mechanism under the guidelines and a procedural sentencing precedent to raise and win that claim. A defendant would win that claim unless for some reason it was harmless, and the defendant would win that claim under a sentencing procedural error. A couple of circuits that have considered this substantive, that doesn't really ring with me very well. It would seem procedural to me, too. I want to stress that we don't think, of course, that Mr. Bowie is right, but if Mr. Bowie is right, the court should decide it on a sentencing procedural error, not expand that to-do process and give defendants, I suppose, two avenues to raise the same claim. They have a proper mechanism to raise this claim, and Your Honor knows defendants win on that, not infrequently. We have plenty of cases where someone's been sentenced on the basis of misinformation. It's a due process. If you say, look, you got three prior felonies, and it's clear they only had one, send it back. Yes, correct. I don't think the court should look at it both ways. One way is sufficient. The due process is usually left for something like that when there's an actual factual error, not a misinterpretation of the guidelines. Of course, we don't think there was one here. Mr. Reitz, could you remind me, a semi-automatic firearm is one where you pull the trigger and a certain number of bullets fly out, right? Three, four, right? Yeah, but you have to keep – sorry. You pull the trigger and three bullets, boom, boom, boom, right? And then you pull it again, boom, boom, boom, and then an automatic weapon, if you pull the trigger, it'll empty the entire cartridge, right? Right. An automatic weapon requires one function of the trigger. You can hold it, and the bullets will fire until there's none left in the magazine, and it's a semi-automatic. Okay. I just wonder, because under the definition of machine gun in the relevant statute, it's interesting. I wonder if a machine gun can also be a semi-automatic weapon under – if it's necessarily an automatic weapon. The statute says that it can be readily restored to shoot automatically more than one shot. So it still could – in other words, a machine gun, if you pull the trigger on a machine gun, it may fire three bullets, and it may not empty the cartridge. Would that make it a semi-automatic gun? And I may be asking more than you know. I understand that. I think – yes, I have to admit, I think you are. But in preparation for this brief, I did try to talk and educate myself about what the department thought was what, because I'm certainly not an expert about these things. And my understanding of our view was that something like Mr. Bowie possessed could qualify as a machine gun too. I didn't run that all the way up to ATF. I talked to more local ATF people, and that's my understanding of what the department's view is, but it is admittedly outside my area of expertise. Okay. That answers my question, though. Thank you. All right. You're welcome. Thank you. If there are no further questions, we'd ask the Court to affirm Mr. Bowie's sentence. Okay. Very well. Thank you. Mr. Leone. Thank you, Your Honor. In the district court, during the briefing and before Judge Hanlon gave his sentence, the government constantly talked about how this was a fully automatic weapon and not a semi-automatic weapon. It came up routinely, and the judge had one question. It only involved the automatic nature of this gun. Couldn't it have qualified as a machine gun? I think there's some great – The reason I'm asking you that, Mr. Leone, I'm wondering if we're missing something here with the difference between semi-automatic and automatic, if we should be considering a semi-automatic weapon with a high capacity magazine versus a machine gun instead of versus a fully automatic gun. I'm not sure I would have to answer like the government. I don't have that precise knowledge of the gun. But I will say it doesn't matter for this case because what matters is the court misunderstood 2K2.183 when it sentenced Mr. Bowie and it relied on it. So after talking about how this was a fully automatic instead of a semi-automatic gun throughout the hearing and throughout the briefs, the government now comes on appeal and says that when the district court said it didn't fully account for the automatic nature of the gun, he was talking about inert objects and a statute that was never mentioned during the sentencing hearing. That's read completely out of context, Your Honor. You have to consider the transcript and you can't read out the parts that the government doesn't like. So Judge Kirsch did mention a few questions about presuming what the court knew and didn't know, and I think it's important to read the transcript here. At Appendix 27, this is the district court's words. It says in paragraph 15, the base offense level is 22, and that is under Section 2K2.183, and that is because the offense involved a semi-automatic firearm capable of assessing a large capacity magazine. Now you go from Appendix 27 to the final ruling on Appendix 46. He's referencing paragraph 15. He says some of these factors are already taken into account. Where are you reading from now? Appendix 46, the third paragraph. 46? Yes. Where did you start? Appendix 27. Okay. Okay, I got you. Go ahead. So Appendix 46, after explaining that this was a semi-automatic firearm and 2K21 took into account that, it says, the court says some of these factors are already taken into account by the higher base offense level that he is subject to under 2K2.183, and that's, of course, for the armed robbery conviction as well as the firearm being able to accept an extended magazine. He's referring back to paragraph 15, but then he says it doesn't fully account for the fact that it was a fully automatic weapon. Your Honor, that wasn't a statement about inert objects and a statute that was never mentioned during the sentencing hearing. But I'm just, I got it. When he says it doesn't account for the fact that it was a fully automatic weapon, does the statute, though, does 28? Yes, Your Honor. Does 5845A account for it? When I look at 5548A, is it a firearm, shotgun, a sawed-off shotgun, a rifle, any other weapon, which is anything, a destructive device? Yes, Your Honor. I would read that statute as to include a fully automatic weapon because I think that is what a machine gun is under the law. Well, a machine gun under the law is a weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger. That means it could be a semi-automatic weapon. In other words, a machine gun could be a semi-automatic weapon. I mean, maybe, Your Honor. I'm not sure I would read it that way, but I think still the point is the district court didn't understand this when it relied on it. And that's the due process violation. I realize Judge Scudder said, you know, it's maybe more of a procedural error under the guidelines in 3553A. And to be honest, we don't care which route the court takes. We just want Mr. Bowie to have a fair sentence hearing. At the sentence hearing, he got a 72-month sentence with a guidelines range of 37 to 46 months. That's a steep penalty to pay. And it was for possessing a gun in a split moment after an auto crash. So we just ask the court to please vacate and remand whether it be under the guidelines in 3553A or the due process clause. If the court has no further questions, I would rest on the briefs. Okay. Very well. Thanks to both counsel. The court will take the appeal under advisement.